Clerk, would you call the case, please? 19-06-31, G.A. Wells v. State Farm Fire & Casualty Co. Counsel, if you could approach and let us know who you are and who you represent. Good morning, Your Honor. My name is Edward Seward. I represent the appellate G.A. Wells. And before I should say that, the prior counsel in this case, McKnight, Kitzinger, they filed a motion for substitution on Friday. And we have filed an appearance on Friday, although we have not received that appearance back from the clerk as of yet. Okay. But you're prepared to argue one way or the other? Yes, Your Honor. You're prepared to argue one way or the other? Yes, Your Honor. And we're just seeking leave of court to file our appearance. Granted. Thank you, Your Honor. Okay. Good morning, Your Honor. Michael Rieses from Smith Amundson for the appellee, cross-appellant, State Farm. Okay. The usual rules will apply 15 minutes aside. Save some time for rebuttal if we unduly harass you with questions, which is not all that likely in this case. But if we do, we'll give you a little bit more time. Thank you. You're welcome. May it please the Court, again, my name is Edward Seward. I represent the plaintiff appellant, Gia Wells, in this particular case. The issues presented for the Court is whether the trial court erred in granting a 2-619.1 motion, whether a fraudulent denial can be considered a bona fide dispute, and there was a cross-appeal where the trial court withdrew an order non-pro ton. From the appellant's standpoint, the main order that's at issue is the trial court's order dated February 27th of 2019. It's unclear whether the order was, whether the dismissal was based on 2-615 or 2-619. The only reference in the order is to 2-619.1. However, the appellant believes that the motion was granted based on 2-615 because The dismissal was based on paragraph 22 of the complaint. The order states in paragraph 22 of the complaint, Plaintiff pleads that on June 3rd, 2016, defendant noted that plaintiff had been living at the dwelling on a part-time basis. The court finds that this allegation creates a bona fide dispute about coverage and whether the dwelling was unoccupied under the policy. Defendant's motion to dismiss count 2 is grounded with prejudice. So the dismissal was based on a single allegation in the complaint, paragraph 22. The trial court did not note any facts outside the complaint. It was strictly based on that one provision. A 2-619 motion admits the legal sufficiency of the complaint and relies on matters outside the complaint to defeat the claim. Because the court didn't rely on any outside matters to defeat the claim, it was strictly based on a single paragraph in the amended complaint. We believe that this was a dismissal based on 2-615. A 2-615 motion admits all well-pleaded facts and reasonable inferences drawn therefrom and tests the legal sufficiency of the complaint. A dismissal under 2-615 should only be proper when no set of facts can grant relief. Among the allegations that the plaintiff made, we're talking about 615 versus 619, among the allegations plaintiff made is that, quote, GIA had been on an extended honeymoon for approximately five months prior to discovering the loss, close quote. If that doesn't indicate a bona fide dispute as to whether the property was unoccupied, I don't know what you'd have to type to create one. Your Honor, I think you cannot look at one allegation by itself. You have to look at the complaint in totality. And there are other allegations in the complaint where if the complaint was spread. The whole case here is why did this place get flooded? Why was it uninhabitable? Why was nobody living in it? Did they make any representations or misrepresentations about whether it was occupied, checked on, et cetera? Now, some of that has to do with 619, I grant you. But on the 615, just that allegation alone, which is at the very core of this case, indicates that State Farm had a legitimate reason for disputing that they should get coverage. Well, then you go back on to the issue of whether that legitimate reason was actually a pretextual reason, because State Farm noted in, I believe it was June 3rd of 2016, that the premises was occupied on a part-time basis. So State Farm's records shows part-time basis, which is not unoccupied. It means it's still occupied. Well, not according to your client, because she said that she wasn't there for five whole months, during which time the problem happened. Are you referencing this as a 619 at this point? It doesn't, you know, to me, I don't care, because I think you're in trouble on both of them. But, you know, you want to talk about whether it was occupied or not or what State Farm thought. Your client said, not her husband, your client said that she was not there for, okay, 12, 9, 15, she'd get remarried, 1, 16, she went on a honeymoon and didn't go back until May. I don't care what other representations were made. That's the representation made by your client. However, Your Honor, initially State Farm, although they noted in June 3rd of 2016 that the place was occupied on a part-time basis, rather than denying it at that point, what they did was they continued to investigate. They brought in an engineer who tried to determine what the... Who knows better, State Farm or the woman who owned the house, whether or not it was occupied, the woman who was on a five-month honeymoon? Well, the woman who occupied the house, but State Farm has knowledge that the dwelling was at least occupied part-time, Your Honor. I'm not persuaded. Again, whether it was occupied part-time or full-time, you have an issue where State Farm did not immediately deny the claim based on that basis. What they did was they hired an engineer and an engineering firm came in and made a determination of damage by pipes. However, when that... It turns out that that explanation could not have caused the damage because there was no... The water in the pipes were turned off, and State Farm went back to the engineering firm, and the engineering firm said that's correct, that could not be the cause. And State Farm again went back to the engineering firm a third time asking for a cause, and the engineering firm said that we cannot determine the cause of this loss. And at that point, over a year later, State Farm decided that they're going to deny coverage based on whether this was a part-time or full-time, whether the plaintiff was living there full-time or part-time. So it's vexatious and bad faith that they have an engineering firm look at it to try to figure out what the heck happened while your client was living in Mexico or something? Your Honor, if they were going to deny the claim, then they should have... By continuing to investigate the claim, by hiring the engineering firm, by having the engineering firm go back three years, and then after that loss could not be determined, then State Farm went and decided this is the reason why we're denying this claim. So if once State Farm decided that they were going to hire the engineering firm to determine the cause of the claim, then at that point we believe that there was a waiver of any policy defense based on the part-time basis. Waiver? Waiver by somebody who wasn't in the house when the problem happened, who acknowledges in her complaint that she wasn't there for months and months and months? The only bad faith here is by the plaintiff, not the insurance company. Wouldn't there be bad faith if they didn't do some kind of investigation? Your Honor, if the basis was that she was living there on a part-time basis, and again... Well, she didn't say that, though. She said she wasn't there. She was on vacation at the time. But there's other allegations where she was living there periodically. Not during her vacation. Not during the time she was on vacation. Five months. Your Honors. Hey, they're your facts, not ours. I understand. If State Farm, they had that opportunity, they could have denied. If they thought that there was a dispute over whether she was living there or whether the premises were occupied or unoccupied, they could have, at that point, denied the claim, saying that the place was unoccupied. So State Farm dotting its I's and crossing its T's is wrong somehow? It's after State Farm could not determine the cause that State Farm went back to this note a year earlier, Your Honor. So if State Farm was going to deny the claim on that basis, there wouldn't have been a need to have the engineering firm come in and do the investigation. State Farm thought that the engineering firm was going to give them a basis to deny the claim. And when it turns out that engineering firm's basis to deny the claim no longer existed, at that point State Farm went back to the prior note saying that it was occupied on a part-time basis. And because they went back to the original note a year earlier, we think that's a bad-faith claim, Your Honor, a bad-faith denial. Can there be two reasons to deny a claim? There can be, Your Honor. Okay. So we believe that there's sufficient allegations in the complaint in order to state a cause of action under Section 155 of the Insurance Code. The only issue left would be the cross-appeal where there was a denial of an order, I mean, the court vacated an order non-pro tonic. However, whether the court was it proper to use that phrase non-pro tonic really isn't the issue. The fact is there was a motion filed, a timely motion filed. The court had jurisdiction to vacate that order. So even if the court erroneously used the term non-pro tonic in its decision, it really doesn't matter because the court had that ability to vacate those orders on a basis under Section 230. Because it was within the 30 days. That's correct, Your Honor. Yeah. The court still had jurisdiction. Okay. Thank you very much. All right. Thank you. Mr. Reisses. Good morning, and may it please the Court. Again, my name is Mike Reisses. I'm here today on behalf of the Pelley Cross Appellant State Farm. First, I want to talk a bit about our motion. Our motion did not ask the trial court to decide the merits of the plaintiff's claim for coverage based on breach of the insurance policy. That was count one. Rather, our motion was simply whether there was credible evidence that the plaintiff had misrepresented or concealed material facts giving rise to a legitimate dispute over coverage. The plaintiff had alleged in Paragraph 22 of the Second Amendment complaint, and I think we've also heard references of other allegations in the Second Amendment complaint, that she was living at this dwelling on a part-time basis. We submit that the trial court properly dismissed that claim on grounds that there was a bona fide dispute about whether she was occupying the dwelling at the time of the loss. And based on the record, we submit that dismissal of that count should be affirmed. Now, our motion was supported not with evidence that was manufactured by State Farm, but mainly consisted of testimony from the plaintiff's examination under oath, which was taken before suit, the affidavit of Jacob Thompson, the State Farm claim specialist, and the reports of the engineering firm that we retained to investigate the cause of the loss. In response to that motion, plaintiffs submitted no counterproof, nothing, not one affidavit, not one document. But plaintiff could not rely on the pleadings alone to create a question of fact under 2619.1. Absent any counterproof, the courts had to accept State Farm's proofs as true, and those proofs create at the very least a bona fide coverage dispute. According to Thompson's unrebutted affidavit, plaintiff and her husband claimed on more than one occasion that they had been on a vacation or an extended honeymoon in Mexico for five months between January 2016 and May 2016. Paragraphs 43 and 44 of count two allege the plaintiff was on a vacation or an extended honeymoon between those two dates. However, at the time of plaintiff's examination under oath, she testified to the contrary that she and her husband were on vacation for only 10 days. In January 2016. And she admitted during her examination under oath that no one was visiting the premises between December 2015 and May 2016 when she discovered the water damage. The different accounts that plaintiff and her husband gave for how long they were out of the country, as Justice Lavin observed, a fact that was certainly within their knowledge, as opposed to State Farm's knowledge, pointed to a bona fide dispute on the issue of her occupancy of the dwelling. And that issue was material, given that the plaintiff and her husband were actually living a short distance away in Stager between January and May 2016. 2.1 miles from Creek to Stager. I know that I used to live out in the South Side. You know, I Googled it. I Googled that. And I didn't want to give the distance, but I know that the Court can bring its experience to deciding issues. And I think it's a fair question whether the dweller was a customary place of abode when she concealed the fact that she was actually living a short distance away instead of having a honeymoon or an extended vacation in Mexico for five months. I wanted to correct one thing that I did hear someone from the panel make the statement that she was getting married in December 2015. Actually, it was December of 2014. Okay. December of 2014. And we know that because not only is it in Thompson's affidavit, but it's in the response to the request to admit that we made at page 945 that she was married on December 9, 2014 in Markham, Illinois. Does it mean you can't have an extended honeymoon? If that's where you really go after you've been married for more than a year, you know. But that's not what happens here. Plaintiff also claimed during the examination of their oath that the heat was left on, but she never could provide the thermostat setting. The engineering firm that we hired concluded from the plaintiff's gas bills that the gas usage was not adequate to heat the premises, and they prepared a chart showing minimal usage during the 2015-2016 winter. That's at record site 855. Jay Hyland, the plaintiff's plumber, not State Farms' plumber, told Thompson that the freezing caused the damage to the plumbing, and there was certainly a bona fide dispute whether plaintiff maintained adequate heat for the dwelling over the winter. If that were not enough, plaintiff and her husband also gave conflicting accounts about the circumstances surrounding the water shutoff. Her husband first told Thompson in June of 2016 that the village shut off the water in 2016 due to a large, unexplained water usage. Then the plaintiff and her husband told Thompson they didn't have any water bills because plaintiff always paid in cash. And then during another inspection in January of 2017, her husband told Thompson that the plaintiff had asked the water to be shut off in 2014. Thompson's own investigation showed that the village shut the water off for nonpayment in June 2014. Again, shutting the water off in June 2014 would be consistent with the fact that no one was living there, even on a part-time basis, but again, the only issue before the court is whether State Farm had credible evidence to form the conclusion that the premises were unoccupied. A dwelling is unoccupied when it ceases to be a customary place of habitation or abode when no one is living there or residing there. Based on the totality of the circumstances, whether plaintiff was occupying the dwelling that she admittedly did not visit for five months between December of 2015 and May of 2016 while living elsewhere did raise a bona fide dispute. And based on the same evidence, there was also a dispute as to our second affirmative defense that there was no covered loss. Plaintiff did not show in response to our motion that the evidence was incredible, unreliable, or lacking in substance. You may have heard some rhetoric this morning from the plaintiff, empty rhetoric, but the evidence largely consisted of statements from the plaintiff, her husband, her plumber, the village, and the gas bills. It was not necessary that all of the evidence pointed conclusively against coverage when State Farm had a legitimate and reasonable basis for disputing the coverage loss. For all the reasons argued in our brief, we ask you to affirm the dismissal of count two. Now, let me just talk about the cross appeal for a moment. We submit the trial court could not use a non-protonc order to vacate its finding that the plaintiff's failure to appear for a deposition was willful. What is a non-protonc order? A non-protonc order cannot be used to cure a judicial error or supply omitted judicial action to correct a clerical error. An example of a non-protonc order is one that reverses a trial court's proper – I'm sorry, proper – I'm sorry. Let me start again. An example of what is not a non-protonc order is one that reverses a trial court's prior decision. Because that wasn't entered inadvertently. That wasn't entered as a mistake. Judge Snyder intended to find on February 28th that the failure to appear for her deposition was willful. That was not entered as a mistake or clerical error. And when an order or finding is non-protonc, it's void. It's void ad initio. The order of March 28th that vacated the finding of the willful violation was void. For all of the reasons set forth in our cross appeal, we ask you to reverse the order of March 28, 2019, that vacated that finding while affirming the dismissal of count two of the Second Amendment complaint. I just have one question. Did Crete and State Farm all agree that the water was turned off in 2014? Certainly State Farm and Crete would agree that the water was turned off in 2014 based upon what the village of Crete told State Farm. So did anybody explain how there was water in the pipes in 2016 to freeze and flood the whole basement to 73 inches? So if you look at the first addendum to the engineering report, the engineering firm states that the piping in the basement was badly corroded. And it is possible that what happened is that the piping that led to the water pressure tank failed and fractured and that the source of the water would have been the well, because the property had a well. And it's possible that what happened was that the well water came in through the fractured piping, which in turn would have caused the sump pump to activate. And then the two would have been going together, because no one was visiting the property for months at a time, through February and March, and that's where the water came from until, of course, they both failed because either a water damage or the motors burned out. But we do know that what happened during that time period is there's a spike in the electricity usage. The spike occurs when? In February and March of 2016. So we know where it came, we know where the power consumption came from. We know it's that too. Right, from the sump pump and from the water pressure tank, that whatever brings in the water from the well from outside the structure. If there are no further questions. Thank you very much. If I could, I would reserve 30 seconds rebuttal for the cross appeal. I wouldn't worry about it. I wouldn't worry about it. Fair enough. I always try to listen to you. Fairly briefly. Your Honor, this was a dismissal based on 2619.1. The only allegation that the court was at was based on one paragraph in the complaint. We believe under 2615 that there was sufficient facts pled where it would sustain a cause of action. Under 2619, the 2619 motion admits the legal sufficiency of the complaint. And again, all well pleaded facts are admitted as true. And the defendant is not supposed to contest the well pleaded facts in the complaint. So because under 2619 that the legal sufficiency of the complaint has been deemed admitted, we believe that the motion to dismiss was improper either under 615 or 619. Thank you. Thank you for the briefs and the argument. And Mr. Stewart, you in particular are to be complimented for stepping up to the plate at a late date on behalf of your client. We will consider the matter and issue an opinion forthwith. And we're going to take a brief break for a panel change.